## CAR FLOAT No. 5.

### JONES *et al. v.* CAR FLOAT No. **5.**

#### (District Court, S. D. New York.  April 28, 1892.)

SALVAGE—BEACHING LEAKY FLOAT—EXCESSIVE SECURITY—COSTS.

    A float with loaded cars, while in tow of a large tug, got on rocks. After floating, she was found to be leaking badly, and the tug started to beach her. Two smaller tugs were employed for some 10 or 15 minutes in keeping the float straight, and in landing her in shallow water, where the large tug could not go. The owners of the float settled with the second tug to arrive for $125. *Held,* that the tug first to assist should receive $200; but as no demand had been made, and as security had been exacted in the sum of $5,000, costs were refused.

In Admiralty.  Libel by Richard Jones and another against Car Float No. 5.  Decree for libelants for salvage.

*Alexander & Ash,* for libelants.

*Wing, Shoudy & Putnam* and *Mr. Burlingham,* for claimant.

BROWN, District Judge.  On September 17, 1891, about 7 o'clock A. M., while the tug Intrepid was towing car float No. 5 with loaded cars from Wilson's Point to New York, the float, through the parting of the hawser, got aground on the rocks at Pot Cove in Hell Gate.  When floated off she was found to be leaking so much that the tug deemed it prudent to take her as speedily as possible to the flats to the eastward of the Brothers islands.  On approaching North Brother the float was yawing badly through partly filling, and signals were sounded by the Intrepid, calling for assistance, to which the tugs Curtis and Spray responded immediately.  The Spray having previously passed the float and observed her condition, recognized the necessity of beaching her at once, and of keeping her straight while passing the North Brother; and she accordingly went alongside the float at once, without stopping for any prior interview with the master of the Intrepid, which was ahead on a hawser. The Curtis not knowing the condition of the float, went alongside the Intrepid and bargained with the master to assist the float "around the point" for $10; and thereupon took hold.  The float was soon beached upon the flats by the aid of the two tugs in shallow water, where the Intrepid could not go; and afterwards the master offered to audit the bills of each, which was declined.  On the same day the owners of the Spray filed this libel for salvage.

I do not credit the evidence of the claimants that the pilot of the Spray was told that he was not wanted before he went to the float, or was or-

dered off after he got there. The master of the Intrepid, who, it is said, gave those orders, has not been called as a witness, nor is any sufficient reason given for not producing him. His supposed order to the Spray to go away is sufficiently accounted for by his order to cast off the hawser; and the weight of evidence is clear that the Spray did not go alongside the Intrepid at all, but went at once to the float and took charge of her management. Nor is it probable that if the master had ordered him away from the first, he would have offered to audit his bill after the service.

The assistance desired was, however, comparatively slight; namely, some 10 or 15 minutes' service in keeping the float straight and beaching her upon the flats a little to the eastward. If the Spray's services had not been expected by the master of the Intrepid, his bargain with the pilot of the Curtis would evidently be a piece of cunning approaching imposition; if so, it was voluntarily compensated for by the owners afterwards, by the allowance to the Curtis of $125, for her services. It seems to me probable, however, that the master of the Intrepid, seeing that the Spray was going alongside the float, bargained with the Curtis for $10 as for a merely additional service besides that of the Spray; for the weight of testimony shows that the Spray came up to the float first. The services of either boat alone would probably have been sufficient; but the circumstances were such that the master might well have thought best to avail himself of the offer of both. The Spray having arrived a little earlier, and having in reality acted as principal as between the two, should be allowed more than the Curtis. Two hundred dollars will, I think, be a sufficient and appropriate compensation, (*The Jas. Rumsey*, 40 Fed. Rep. 909;) but as the libel was filed immediately, and without demand, and as security in the sum of $5,000 was required, the decree must be without costs.